■ . THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MAURICE DUNCAN, Respondent.—Appeal by the People from an order of the Supreme Court, Kings County, dated January 9, 1979, which (1) granted defendant's motion to set aside a jury verdict convicting him of murder in the second degree, assault in the first degree and criminal possession of a weapon in the second degree, and (2) ordered a new trial. Order affirmed. No opinion. Damiani, J. P., Titone and Margett, JJ., concur.

Martuscello, J., dissents and votes to reverse the order, deny defendant's motion and reinstate the verdict, with the following memorandum: On November 22, 1976, at approximately 8:00 P.M., defendant and two others entered Chester Gaskin's clothing store, "Unique Fashion", located at Bedford Avenue and Fulton Street in Kings County. Present in the store at the time were Chester Gaskin, Henry Assam, Anthony Pierre and Trevor Osborne. One half of the business consisted of selling clothing and the other half marihuana. The three men asked to purchase marihuana but were told there was none. At least two of the three men drew guns and started firing. Osborne was killed and Gaskin wounded. In December, 1976, in an attempt to identify the perpetrators, Assam, Gaskin and Pierre were each shown 1,750 photographs, one of which was of the defendant. While Assam and Pierre did not identify defendant's photograph Gaskin did. The police proceeded to investigate defendant's whereabouts. Apparently as a result of such investigation defendant came to the station house on January 4, 1977 where he was arrested. Defendant was placed in a lineup and both Gaskin and Assam identified him.[1] Thereafter, in an indictment filed in January, 1977, defendant was charged with murder in the second degree (two counts), attempted murder in the second degree, assault in the first degree (two counts) and criminal possession of weapon in the second degree. At trial Gaskin, Pierre and Assam identified defendant as the perpetrator. Gaskin and Pierre both testified that they recognized defendant as someone they had seen before. The defendant presented an alibi defense by means of three witnesses. In addition, testimony was presented that shortly after the crime Gaskin stated that the crime was committed by four unknown males. On June 14, 1978 the jury returned a verdict finding the defendant guilty of murder in the second degree, assault in the first degree and criminal possession of a weapon in the second degree. Subsequently, almost six months later, defendant moved to set aside the verdict on the grounds of newly discovered evidence, which included, *inter alia,* the testimony to be furnished by a new witness, Monica Hill. At a hearing held on the motion on December 7, 1978, Hill testified that she was at the scene of the crime on

1. Evidence regarding the lineup identification was suppressed because defendant's counsel was not present when it was conducted.

November 22, 1976, that she heard a shot, that in a matter of seconds she saw three men two of whom she knew (Bunny Dred and Smokey) flee from "Unique Fashion", and that she saw them get into a car. She claimed that she did not see defendant at the scene. When asked by defendant's attorney whether the defendant was one of the three people she saw coming out she replied "no". While Hill conceded that she knew defendant socially and had been out with him 5 or 10 times, she claimed that she did not know of his arrest or conviction of the subject murder until November 8, 1978 when she saw a poster offering a $5,000 reward for information about the incident and contacted defendant's attorney. She did not go to the police at the time the crime was committed because she feared that she had been recognized by "Bunny Dred" and "Smokey". Significantly the defendant did not call Smokey to testify and declined to accept the suggestion of Criminal Term that the eyewitnesses view him.[2] At the conclusion of the hearing Criminal Term granted the motion to set aside the verdict, finding that defendant had established by a preponderance of the evidence "every fact essential to support the motion". In support of its conclusion Criminal Term stated the following: "It is clear that the defense did not know of Ms. Hill's connection with this case until several months after the trial and could not have learned that she had allegedly witnessed the flight of the perpetrators even with the exercise of due diligence. It is also clear that she is what might be deemed an 'independent witness,' not being dependent upon the defendant or the outcome of the trial in any fashion. (Of course, her interest in the reward could certainly be made known to the jury, as could her prior acquaintance with the defendant.) Ms. Hill's testimony is certainly material to the issue. It involves the identification of the defendant and his presence at the scene of the crime. It should be noted that the defense proffered at the trial was that the defendant was elsewhere, and an alibi defense was submitted to the jury. In addition, it cannot be said that Ms. Hill's testimony would be merely cumulative to the former issue and merely impeaching or contradicting of the former evidence. This leaves us with the final category—would Ms. Hill's testimony probably change the result if a new trial were granted? There were three eyewitnesses to the crime who were in the store on the night of the murder and who testified at the trial. One, Mr. Assam, did not select the photograph of this defendant from the photo array. At the line-up Mr. Assam said that the defendant looked familiar, but that he was not 100% sure of his identification. Mr. Gaskin, the owner of the store, who picked out the defendant's photograph and identified him in the line-up testified that the perpetrator had rough skin on his face and scars, neither of which defendant has. The third witness, Mr. Pierre, did not pick the defendant's picture out of the photo array and did not witness a line-up. There were further minor inconsistencies concerning the defendant's clothing and whether or not he had been carrying a gun. Considering all of these facts, the court believes that there is a probability that a jury, upon hearing Ms. Hill's testimony, would reach a different verdict." I disagree and hold that the motion should have been denied. In *People v Salemi* (309 NY 208, 215-216) the following criteria were enumerated for granting a new trial on the basis of newly discovered evidence: " 'Newly-discovered evidence in order to be sufficient must fulfill all the following requirements: 1. It must be such as will probably change the result if a new trial is granted; 2. It must have been discovered since the trial; 3. It must be such as could have not been discovered before the trial by the exercise of

2. Bunny Dred is apparently dead while Smokey is incarcerated.

due diligence; 4. It must be material to the issue; 5. It must not be cumulative to the former issue; and, 6. It must not be merely impeaching or contradicting the former evidence.'" (See, also, *People v Bridget,* 73 AD2d 291; *People v Wagner,* 51 AD2d 186.) When a defendant moves to set aside a verdict on the grounds of newly discovered evidence he bears the burden of establishing these requirements by a preponderance of the evidence (see *People v Bridget, supra).* It is clear beyond cavil that the first requirement was not fulfilled and that Criminal Term, in finding that it was, mistakenly overemphasized the importance of minor inconsistencies in the evidence. In this regard it is vital to note at the outset that at the *Wade* hearing Criminal Term stated the following in describing defendant's physical characteristics: "distinct * * * unlike any face that this Court has ever seen before. His features are heavy, distinct and unique. Gazing at the photograph of the line-up gives a mere suggestion of the aspect of this man * * * He has the sort of face that would take less viewing, less length of time to view and remember than another person who perhaps would have to be looked at for a longer interval to remember because his face is so distinctive. I have never seen anything like it and this is said without the presence of the defendant so that his feelings will not be injured." At the trial three eyewitnesses identified defendant, who as indicated, was described by Criminal Term as having a "unique" face. Two of these witnesses also identified defendant at a lineup (the third did not view a lineup).[3] In opposition to this overwhelming showing of guilt stands Monica Hill's testimony that she did not *see* defendant at the scene of the crime. Hill conceded that her view of the three men leaving "Unique Fashion" was of short duration. Significantly her observation was made in the street at night while the People's eyewitnesses had an opportunity to observe defendant in a well lit store. Moreover, her sudden appearance on behalf of the defendant, with whom she was previously acquainted, two years after the commission of the crime, and upon the offer of a $5,000 reward, does not exactly clothe her with a coat of credibility. Her two-year silence speaks as powerfully as her recent and unsatisfactorily explained willingness to testify. In regard to the reward it is noteworthy that there is no indication where defendant, employed part time in an automobile repair shop, was going to raise the funds to pay it. Stripped to its essentials Hill's testimony merely asserts that she did not see defendant at the scene of the crime. Clearly that does not mean that the defendant was not there. In any event, as indicated previously, her credibility leaves much to be desired. The evidence presented by the People overwhelmingly established defendant's guilt. The weaknesses in the People's case pointed to by Criminal Term cannot be termed anything but unsubstantial. Hill's testimony is not such as would probably change the result if a new trial is granted. Accordingly, the criteria for setting aside the verdict under CPL 330.30 (subd 3) are not established by the defendant. Therefore, I would reverse the order appealed from, deny the motion and reinstate the verdict.

---

3. Criminal Term adverts to the inability of two witnesses to male photographic identifications. In view of the lineups and in-court identifications, the inability to make photographic identifications, which was brought to the jury's attention, seems inconsequential.